UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| KIMBERLY H.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:22-cv-057-MJD-JRS[2] |
| ) | |
| KILOLO KIJAKAZI, Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON JUDICIAL REVIEW**

Claimant Kimberly H. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). See 42 U.S.C. § 1382. For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] On June 22, 2022, the parties filed a joint consent to the jurisdiction of the assigned magistrate judge. [Dkt. 11.] On June 24, 2022, Judge Sweeney referred the matter to Judge Pryor, who was the assigned magistrate judge at that time. [Dkt. 12.] On December 12, 2022, this matter was reassigned from Magistrate Judge Pryor to the undersigned. [Dkt. 17.] Pursuant to the parties' consent and the order referring the case to the assigned magistrate judge, the parties' consent to the undersigned became effective thirty days after the date of reassignment if no objection was filed. [Dkts. 11 & 12.] Thirty days have passed since the reassignment, and no objection has been filed.

## I.  Background

Claimant applied for SSI on September 18, 2019.  [Dkt. 8-7 at 8.]  Claimant's application was denied initially and upon reconsideration, and a hearing was held before Administrative Law Judge Paul Jones ("ALJ") on October 14, 2020.  [Dkt. 8-2 at 32.]  On October 23, 2020, ALJ Jones issued his determination that Claimant was not disabled.  *Id.* at 11.  The Appeals Council then denied Claimant's request for review on December 17, 2021.  *Id.* at 2.  Claimant timely filed her Complaint on February 15, 2022, seeking judicial review of the ALJ's decision.  [Dkt. 1.]

## II.  Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 1382.  Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled.  20 C.F.R. § 416.920.  Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC")

by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

In reviewing Claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).

An ALJ need not address every piece of evidence but must provide a "logical bridge" between the evidence and his conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether Claimant is disabled. *Id.*

### III. ALJ Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since her application date of September 18, 2019. [Dkt. 8-2 at 13.] At step two, the ALJ found that Claimant had the severe impairments of obesity and status post left total knee arthroplasty. *Id.* The ALJ also found that Claimant's stage one chronic kidney disease and an old right tibia fracture were non-severe impairments. *Id.* At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 416.967(b) with the following postural limitations:  occasionally climb, balance, stoop, kneel, crouch, or crawl.

*Id.* at 14.

At step four, the ALJ found that Claimant was able to perform her past relevant work as a school bus monitor. *Id*. at 18.  Alternatively, at step five, the ALJ, relying on testimony from a vocational expert ("VE"), determined that Claimant was able to perform jobs that exist in significant numbers in the national economy, such as ticket taker, routing clerk, and collator-operator.  *Id*. at 19.  Accordingly, the ALJ concluded Claimant had not been under a disability, as defined by the Act, since her application date of September 18, 2019.  *Id.* at 20.

### IV.  Discussion

Claimant presents one argument in support of remand:  the ALJ's RFC assessment is not supported by substantial evidence because the ALJ failed to properly consider the medical source statement of Claimant's treating medical providers, Andrew Mathis, PA-C and Greg Brock, D.O. [Dkt. 10.]

Under prior regulations, "[a] treating physician's opinion regarding the nature and severity of a medical condition [was] entitled to controlling weight if it [was] well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000), *as amended* (Dec. 13, 2000); *see also* 20 C.F.R. § 416.927(c)(2).  This so called "treating physician rule," however, was eliminated for claims, such as Claimant's, that were filed after March 27, 2017.  20 C.F.R. § 416.927c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s).").  Thus, in this case, the ALJ was not required to give any special weight to the opinions of Claimant's treating physicians.  Rather, under the current standard, an ALJ must evaluate **all**

4

medical opinions—from treating providers, consultative examiners, and independent medical examiners—on an equal basis for "persuasiveness." *Id.* ALJs are instructed to evaluate all medical opinions using factors including whether the opinion is supported by objective medical evidence; the opinion's consistency with other evidence; the professional's relationship with the patient, including the length, frequency, purpose, and extent of treatment; and the professional's specialization. 20 C.F.R. § 416.927c(c). In addition, the regulation expressly recognizes that "[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder." 20 C.F.R. § 416.927c(c)(3)(v). After considering the relevant factors, an ALJ must articulate how persuasive he finds each medical opinion in his decision. 20 C.F.R. § 416.927c(b). The most important factors ALJs will use in determining the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 416.927c(b)(2). Opinions that are supported by and consistent with objective medical evidence will be most persuasive. 20 C.F.R. § 416.927c(c)(1)-(2).

On August 20, 2020, Certified Physician Assistant Andrew Mathis completed a treating source statement regarding Claimant's physical conditions, which was also signed by Dr. Greg Brock, D.O. [Dkt. 8-18 at 14.] The form was completed approximately six weeks after Claimant underwent a left knee replacement surgery and reflected Claimant's condition at that time. PA-C Mathis noted that he had treated Claimant twice per year since August 16, 2018, and that she had been diagnosed with lower extremity edema, elevated c-reactive protein, nocturnal hypoxia, aphasia, vision changes, atypical headache, hypertension, and chronic kidney disease stage 2. *Id.* at 14, 18-19. PA-C Mathis opined Claimant would likely be off-task ten percent of a typical workday, was able to maintain attention and concentration for less than an hour due to

5

pain or medication side effects, and was likely to be absent from work two days per month due to impairments and/or treatment. *Id.* at 14. PA-C Mathis further opined that, based on Claimant's subjective reports, Claimant could continuously lift and carry ten pounds or less; frequently lift twenty pounds; and occasionally carry twenty pounds. *Id.* at 15. He further opined, again based on Claimant's subjective reports, that Claimant could sit for six hours of an eight-hour workday; stand/walk for two hours of an eight-hour workday; and required the option to sit/stand at-will. *Id.* In addition, he noted that Claimant would need to keep her legs elevated "for now, until her leg/knee heals in 6 mo-1 yr" and that, again based on Claimant's report, she required a cane or a walker, depending on the distance, to ambulate effectively and that she could ambulate 10-15 feet without an assistive device. *Id.* at 15-16. PA-C Mathis further opined that Claimant could rarely push/pull with her arms/hands but could continuously reach, handle, finger, and feel with her upper extremities; this, too, was based on Claimant's report. *Id.* at 16. PA-C Mathis noted that Claimant could never use foot controls with either foot because her surgeon had not yet released her to drive. *Id.* Finally, PA-C Mathis opined that Claimant could continuously rotate her head and neck, rarely balance, and never climb stairs, ramps, ladders, or scaffolds, or stoop, kneel, crouch, or crawl. *Id.* at 17. This conclusion was based on Claimant's report and PA-C Mathis' "knowledge of [total knee replacement]." *Id.* at 17.

      The ALJ found PA-C Mathis' opinion, as endorsed by Dr. Brock, not persuasive, stating:

First, Mr. Mathis's findings are admittedly largely based on claimant's own subjective reports, rather than his own objective evaluation of claimant or her records; therefore, not his professional opinion. In addition, his opinion is given only six weeks after claimant's surgery, and such restrictive findings are not supported by or consistent with the medical record as a whole. Examinations showed some tenderness, crepitus, and reduced range of motion of claimant's left knee, but she generally displayed full strength and walked with a normal gait (Exhibits 2F/24, 29; 11F/12, 16; 22F/14; 24F/52, 56, 62). Although claimant has used an assistive device in the weeks following her knee replacement, she testified

6

> that she did not use a cane or walker prior to her surgery. Recent records note she was healing well, and physical therapy records note only decreased strength, reduced range of motion, and minimal tenderness to the left knee (Exhibits 24F/51-52; 27F/11).

[Dkt. 8-2 at 18.]

Claimant argues that the ALJ's consideration of this opinion is flawed for several reasons. First, she argues that it was error for the ALJ to "discount the opinion of PA-C Mathis and Dr. Brock simply because these treating providers considered [Claimant's] subjective reports." [Dkt. 10 at 13.] However, as the ALJ properly noted, with regard to several of his opinions, PA-C Mathis did not simply **consider** Claimant's subjective reports along with his own observations and examinations and other objective medical information, but rather he based those opinions **entirely** on Claimant's subjective reports. This is demonstrated by the fact that, when asked on the form to identify "the particular medical or clinical findings (i.e. physical exam findings, x-ray findings, laboratory test results, history, and symptoms including pain, etc.) which support your assessment of limitations and why the findings support the assessment," or similar questions, PA-C Mathis answered simply "Pt.'s subjective report." [Dkt. 8-18 at 15, 16.] It was proper for the ALJ to consider that fact in assessing the supportability of PA-C Mathis opinions. *See Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013) ("[W]here a treating physician's opinion is based on the claimant's subjective complaints, the ALJ may discount it.") (citing *Ketelboeter v. Astrue,* 550 F.3d 620, 625 (7th Cir. 2008)).

However, the Court agrees with Claimant that the remainder of the ALJ's explanation for disregarding PA-C Mathis' opinions are not supported by substantial evidence. The ALJ concluded that PA-C Mathis' opinions were not "supported by or consistent with the medical record as a whole." [Dkt. 8-2 at 18.] The ALJ then points to several exhibits in support of his

statement that "[e]xaminations showed some tenderness, crepitus, and reduced range of motion of claimant's left knee, but she generally displayed full strength and walked with a normal gait." *Id.* As set forth below, the records the ALJ cites do not support his conclusion.[3]

- Exhibit 2F at 24 is an examination note from PA-C Mathis dated August 16, 2018, which does note normal gait and normal strength.  However, it also notes the following regarding his examination of Claimant's left knee: "+anterior drawer, +Lachman's, +McMurray, +Varus stress."  PA-C Mathis ordered an x-ray of the knee. [Dkt. 8-10 at 29.]

- Exhibit 2F at 29 is an examination note from PA-C Mathis dated October 29, 2018.  Again, while it does note normal gait and strength, it also notes "left knee is mild to moderately TTP to medial joint line" and "no other appreciable changes from prior exam."  A diagnosis of bone spur of left knee was noted.  *Id.* at 34.

- Exhibit 11F at 16 is a note from Claimant's orthopedic specialist regarding a steroid injection Claimant received in her left knee on November 5, 2019.  There is no mention of normal gait or strength in this note.  It does note that Claimant's x-rays "demonstrate early advanced tricompartmental arthritis with about 1mm joint space remaining in the left knee."  [Dkt. 8-13 at 17.]

- Exhibit 11F at 12 is a note from Claimant's orthopedic specialist dated December 2, 2019, regarding a gel injection Claimant received in her left knee after she had an

---

[3] The Court notes that, in her brief, the Commissioner also cites to these exhibits for the proposition that "while Plaintiff's medical records showed some tenderness, crepitus, and reduced range of motion, she generally demonstrated full strength and walked with a normal gait," without acknowledging that most of the cited exhibits **do not** support that statement. [Dkt. 14 at 13.]

8

- adverse reaction to the steroid injection. There is no mention of normal gait or strength in this note. *Id.* at 13.

- Exhibit 22F at 14 consists of the notes from a July 1, 2020, pre-operative appointment prior to Claimant's knee replacement surgery. There is no mention of normal gait or strength in this note. Rather, the note states that Claimant "walks with a severe limp" and "is really disabled by her left knee pain." [Dkt. 8-16 at 15.]

- Exhibit 24F at 56 is a visit note dated March 23, 2020, from Claimant's orthopedic specialist. There is no mention of normal gait or strength in this note. [Dkt. 8-18 at 2.]

- Exhibit 24F at 62 is a visit note dated May 18, 2020, from Claimant's orthopedic specialist. There is no mention of normal gait or strength in this note. *Id.* at 8.

- Exhibit 24F at 52 is a post-operative visit note dated July 24, 2020, from Claimant's orthopedic specialist. There is no mention of normal gait or strength in this note. *Id.* at 53.

Essentially, the ALJ relied on two notations from 2018, well before Claimant's application date of September 18, 2019, that noted that Claimant had a normal gait and normal strength—but also noted abnormal findings relating to her left knee—to support his statement that PA-C Mathis' opinions were inconsistent with the medical record as a whole. This was error.

The ALJ next notes that "[a]lthough claimant has used an assistive device in the weeks following her knee replacement, she testified that she did not use a cane or walker prior to her surgery. Recent records note she was healing well, and physical therapy records note only decreased strength, reduced range of motion, and minimal tenderness to the left knee. (Exhibits 24F/51-52; 27F/11)." [Dkt. 8-2 at 18.] First, the physical therapy notes cited by the ALJ also reflect that Claimant was still using a walker or cane and that she had functional limitations

including standing more than fifteen minutes and "[w]alking community distance." She was also still taking Norco, a prescription pain medication. The ALJ cites to no medical evidence regarding how long these limitations were expected to last. Further, the relevance of the ALJ's quoted statement to the persuasiveness of PA-C Mathis' opinion is not clear.[4] The fact that Claimant hopefully would not require an assistive device for ambulation indefinitely does not make PA-C Mathis' opinion that she required one at the time of his report unsupported. Nor was it inconsistent with the records cited by the ALJ, inasmuch as Claimant still required a walker or cane at the time of those records.[5]

The ALJ was required to "explain how [h]e considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [his] determination or decision." 20 C.F.R. § 416.920c(b)(2). Here, the ALJ's explanation for why he believed PA-C Mathis' opinion, in its entirety, was inconsistent with the record as a whole is not entirely clear. Even more troubling, the ALJ cites to medical records that simply do not support

---

[4] Perhaps what the ALJ meant to express was that PA-C Mathis' opinion reflected Claimant's condition a short time following her knee replacement surgery, but did not reflect her condition prior to her knee surgery, and might not reflect her condition once she had fully healed from her surgery. If so, however, the ALJ was still required to analyze whether Claimant's condition was disabling or expected to be disabling, for a period of at least one year, which could include time prior to and after her knee surgery. The ALJ does not expressly address that question.

[5] The Commissioner argues that Claimant "makes no effort to actually *prove* [her cane and walker use] was medically necessary," while in the same paragraph acknowledging that "as the ALJ recognized, [Claimant] was prescribed a cane for her recovery after surgery." [Dkt. 14 at 17] (emphasis in original). Indeed, the ALJ noted that Claimant was "prescribed a rolling walker at discharge" from her knee surgery. [Dkt. 8-2 at 16.] The cases cited by the Commissioner notwithstanding, the fact that a walker was prescribed by her surgeon is sufficient evidence of its medical necessity at the time it was prescribed. And, in any event, nowhere in his decision does the ALJ question whether Claimant's use of a walker and a cane following her surgery was necessary.

10

his explanation. Accordingly, the ALJ's explanation is not supported by substantial evidence, and remand is required to remedy that error.

## V. Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED** and **REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated:  13 JAN 2023

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.